Smith and Kirsten Harris recording in progress. I'm Judge Dennis together with Judge Cronin and Judge Ho. We are your panel for the U.S. Fifth Circuit. Dennis Davis versus Jonathan Hodgkiss. May it please the court. Good morning, I'm Kelly Smith for the defendant appellant Jonathan Hodgkiss who's a sergeant with the Williamson County Sheriff's Office. We're here today because the record establishes that the district court erred as a matter of law and its denial of qualified immunity to Sergeant Hodgkiss. First, even setting aside an allegedly false statement in Sergeant Hodgkiss' affidavit, he did not violate the rights of the appellees Dennis Davis and Elizabeth Salcedo because as a matter of law, probable cause existed for issuance of the search warrant. And second, even if probable cause was lacking, a reasonable law enforcement officer could have believed there was sufficient probable cause to obtain the search warrant at issue. Accordingly, Sergeant Hodgkiss is entitled to qualified immunity. First, plaintiffs cannot establish a violation of the constitutional rights of the appellees. Here, they allege that Sergeant Hodgkiss violated the Fourth Amendment rights by using a false statement to secure a search warrant. The district court held that plaintiff's facts gave rise only to a claim under the U.S. Supreme Court case of Franks versus Delaware, 438 U.S. 154. Under Franks, there's a two-part test for a plaintiff who challenges the validity of a search warrant by asserting that a law enforcement agent submitted a false affidavit. That two-part test consists of one, that the affiant knowingly and deliberately or with reckless disregard for the truth made false statements or omissions that created a falsehood in applying for the warrant. And two, that such statements or omissions are material or necessary to the finding of probable cause. Now today, we're not going to talk about the first part of the Franks test because the district court found that there was a fact issue as to whether or not Sergeant Hodgkiss made some sort of misrepresentation. And unfortunately, you're not able to review that decision on an interlocutory appeal. However, whether or not there was sufficient probable cause is a question of law that this court can consider. And so what this court must do is taking apart the allegedly false material, setting that aside, this court has to consider whether the totality of the remaining circumstances set forth in Sergeant Hodgkiss' affidavit established probable cause as a matter of law. So the question is whether or not the alleged misstatement in Sergeant Hodgkiss' affidavit was material to the finding of probable cause. And we contend that it was not. This court's probable cause determination must be based on the totality of the circumstances. The court should not parse the reasons set out in the affidavit and cherry pick them apart individually. But here, the district court did just that. In its opinion, the district court states that it considered the totality of the circumstances, but even a cursory view of the district court's opinion proves otherwise. The district court went through each of the factors set forth in Sergeant Hodgkiss' affidavit and picked them apart rather than considering the circumstances in the affidavit. I'll direct your attention to the affidavit itself, which is located in the record on page 297. And the probable cause facts start at the bottom of page 299. If the court looks at that affidavit, you'll notice that the part that we're not discussing, the part that we're parsing out for purposes of the Franks analysis, is the very last paragraph on page 299. And it's actually not even a full paragraph. It's two sentences. Taking that out of the equation, there's three additional pages of facts in the affidavit that support the finding of probable cause or the issuance of this search warrant. I'll go through the five factors briefly. I just want to list what they are, and I'll go back through each one of them individually. But first, other officers reported high traffic and suspected drug distribution at the South Cedar residence. Second, Sergeant Hodgkiss conducted surveillance of the plaintiff's residence, and that revealed behavior consistent with drug sales. And I'll go through those in detail. Third, a traffic stop of Davis. Davis was found to be in possession of a box that had marijuana residue and a large amount of cash in small denominations. Fourth, Sergeant Hodgkiss conducted a trash run at the residence and discovered more than 25 baggies, which contained cocaine and marijuana residue and other drug paraphernalia. And fifth, Mr. Davis has an extensive criminal history that includes two prior convictions for manufacturing delivery of a controlled substance and for conviction for marijuana possession. So I'll go through each of those. Some of them individually, granted, would not be sufficient to establish probable cause, but those factors combined are certainly sufficient to establish probable cause in this case. So the first circumstance that's outlined in Sergeant Hodgkiss' affidavit is information that he received from other deputies at the Williamson County Sheriff's Office. He reported that on numerous occasions since March 2015, that other patrol deputies had observed Davis and Salcido leave the residence and return after being gone for short periods of time. Multiple vehicles came and went from the house. The occupants would often meet Davis in the street. They would conduct some sort of exchange and stay for only a short period of time before leaving. Now, the officers associated with this with open-air drug sales from the residence. The district court stated that these were conclusory statements describing suspicions and beliefs and that they were not indicators themselves of criminal activity. What the court doesn't realize or what the district court failed to acknowledge is that the officers did not have to actually observe criminal activity in order to form a reasonable belief that narcotics trafficking was going on. That these deputies had training and experience in recognizing narcotics trafficking and they were able to reach the conclusion that there was a reasonable probability that that's what was happening at the Salcido residence. Also, the court's analysis ignores the totality of the circumstances. Granted, if the other deputies' observations, if that was the only basis for seeking a warrant, that probably would not be sufficient. But you have to consider that in connection with the four other circumstances set forth in the affidavit. So next, based on the other deputies' observations and reports to Sergeant Hodgkiss, Sergeant Hodgkiss conducted extensive surveillance of Davis in the residence. He notes in his affidavit one instance where, well, first of all, he established that Davis was a resident of the household. He observed Davis at the residence on numerous occasions, observed which vehicle he was driving to and from the residence. He followed Davis in that vehicle. He followed him on, one example was April 1st, 2015. Davis went to an apartment complex where he went inside for a few minutes, left, went to a gas station, went inside for a few minutes, left, went to the ATV parking lot, met another car in the corner of the parking lot. They had an exchange, only sat there for a few minutes. Neither person went inside the ATV. They left. And after that, Davis went back to his house or to the Salcedo residence. And then he went back to the apartment complex that he had already visited for a few minutes, visited it again just for a few minutes and then left. So that was unusual activity. Another example is on page 301 of the record. He followed Davis to an area that's known for open air narcotic sales. And he said that Davis drove in a manner as if he was going to conduct a drug sale. However, he continued and he didn't stop. He followed Davis. Davis returned to the Salcedo residence for a short period of time. And then he left again and he went to the Department of Corrections for office. And there he met two other gentlemen who got out of their car, got into Davis's car. They had some sort of exchange that Sergeant Hodgkins concluded appeared to be a drug transaction. And then after a few minutes, those gentlemen got out of their car, back into out of Davis's car, back into their car. And everybody left. No one went into the probation office or parole office. It was later determined that the gentleman that Davis met with was a convicted felon with prior arrest, multiple prior arrests for possession and delivery of narcotics. And he in fact had an outstanding and active arrest warrant for felony possession of marijuana. So Sergeant Hodgkins observed Mr. Davis making unusual, suspicious stops at different locations, meeting with people who had outstanding warrants for their arrest and conducting these exchanges for just a few minutes at a time before leaving without ever entering the businesses or the locations where they had stopped. So what the court said was that this did not provide information as to what led the patrol deputies to suspect illegal activity and that no drug transactions were actually witnessed. Again, the officers do not have to actually witness a crime in order to have a reasonable suspicion that that's what's going on. They're allowed to rely on their education and their training. Also, these circumstances have to be considered in totality with the other circumstances, which we'll talk about the trash run and Davis's criminal history. All right. So the third circumstance that's listed in Sergeant Hodgkins' affidavit was a traffic stop that was made by the Georgetown Police Department on April 13th, 2015. They searched Davis's vehicle, the same vehicle that was seen leaving and going to the Salcido residence, and they discovered a box that contained marijuana residue and large amounts of cash in small denominations. Again, this is evidence that suggests drug or narcotic trafficking. Next, Davis conducted a trash run at the Salcido residence. He had observed the trash cans next to the residence, saw the same trash cans sitting on the street for garbage collection. The bags that they took were sealed and they contained mail that directly linked the contents to the Salcido residence. There were several mail items that were addressed to Ms. Salcido at that address, so we know that that was the contents of their garbage. That trash run revealed more than 25 baggies that contained marijuana residue, cocaine residue, other drug paraphernalia that included material to make marijuana blunts. The contents of that trash run are in pages 306 through 317 of the record. Now, the district court acknowledged that the trash run was one of the best facts that Hotchkiss had, but the court said that a single trash run is insufficient to establish probable cause. Now, the court ignored the totality of other circumstances besides the trash run, and this very court, the Fifth Circuit, in a case called United States v. South, found that a single trash run coupled with other circumstances was sufficient to establish probable cause as a matter of law. In the South's case, there was a CITF, which everyone acknowledged was not sufficient to establish probable cause alone, but that was supported by a history of arrest of the plaintiff for other narcotics violations, surveillance that was conducted, and then the single trash run. And what this court said is that this information, in its totality, supported a good faith conclusion by an objectively reasonable officer that the affidavit on which the warrant was based was adequate to establish probable cause. And this court went on and said that South, that's the defendant in the case, his prior arrest on narcotics violations and the evidence discovered in the curbside garbage were sufficient to support a reasonable belief that contraband would be found inside the residence. Now, the court said whether or not a single garbage run is sufficient by itself, it didn't matter because it was sufficient in combination with the criminal history and with their surveillance that was conducted. And in that case, a trash run yielded like eight baggies that contained a recipe. We cite countless other cases in our briefing that a single trash run is sufficient when enough evidence is discovered through that trash run, and it's coupled with other circumstances like we have here. The court questioned whether or not the trash can was sufficiently connected to the residence. We've already established that it was. It contained mail addressed to Ms. Salcido. It was sealed in garbage bags, and those cans had previously been identified as belonging to the residence. The district court also criticized the affidavit for not stating the size of the baggies. In this case, it's not the size of the baggies that reveals the likelihood that they're going to find additional drug or narcotics there at the house. It's the quantity. There were over 25 baggies, countless syringes, tons of other evidence. That trash run was a treasure trove of drug activity. Finally, Davis has an extensive criminal record. As I mentioned, he has two convictions for manufacturing delivery of a controlled substance and a conviction for possession of marijuana. And this court, and Sal, and in other cases, has said that the criminal history is a factor in supporting a probable cause determination. So, in sum, there's ample evidence, or the affidavit is supported by sufficient facts to establish probable cause as a matter of law. But even if it weren't, this court should still grant qualified immunity to Sergeant Hodgkiss because he had an objectively reasonable basis for believing that the facts in the affidavit were sufficient to establish probable cause. The Supreme Court has stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment, and plaintiffs cannot do that. All of the cases that plaintiffs have cited in their brief, with the exception of one, were cases where the court actually found that probable cause existed to support the search warrant. This is not a case where Sergeant Hodgkiss haphazardly sought a search warrant. He conducted a thorough investigation. He relied on statements from other officers. He conducted lengthy surveillance. He investigated the arrest, a traffic stop, where Davis was found to possess other items, and he conducted a trash run, and he investigated his criminal history. And so, for these reasons, we would ask that you extend qualified immunity. Thank you. Thank you. Mr. Harris. Thank you. Thank you, Your Honor. Good morning. May it please the Court. Mart Harris for the appellees, Teddy Davis and Elizabeth Saucedo. I must admit that it wasn't until about an hour ago in my final prep for this argument that I realized the driving force behind the issues in this case as it relates to the arguments being advanced by Mr. Hodgkiss, and specifically, the arguments advanced by Mr. Hodgkiss related to the reasonableness of an officer's actions in submitting the affidavit to Judge King, who is the magistrate in Texas State Court in this case, is somewhat of a blending of a Malley claim rather than what this case is, which is a Franks claim. The reasonable officer in a Malley claim is one where the warrant application is so lacking an indicio of probable cause as to render official belief in its existence unreasonable. That's Reitz v. Woods, Northern District of Texas, July 2, 2001. And the Malley case law is dealing with whether a warrant is sufficient on its own, whether there's enough information in that warrant for a reasonable officer to believe probable cause existed. A Malley case is not what is before this court. This court is about a Franks v. Delaware case, and as relates to the reasonable belief of the officer in a Franks case, we look to the case of Hart v. O'Brien, 5th Circuit Case 127, Federal 3rd at 424, where the second prong of the analysis is easily satisfied here when De La Paz, the law enforcement officer, submitted his affidavit, the law was clearly established, and a reasonable officer would have known that a government official violates the Fourth Amendment when he deliberately provides false material information in an affidavit in support of a warrant. When we're dealing with an issue of Franks, which is this case, the fact that there is a dispute of material fact as to the false information put into the affidavit by Mr. Hodgkiss is sufficient in order to show the denial of qualified immunity at the summary judgment stage. We're in the reasonable belief of the corrected affidavit that would be an issue in Malley. It is not an issue in Franks. Here we are dealing secondly with the issue of whether the corrected affidavit allows for refining of probable cause, and within the Fifth Circuit, that is the end of the analysis as to whether qualified immunity exists in the case. For purposes of the remaining evidence, we have the unnamed patrol deputies that supposedly saw Mr. Hodgkiss or Mr. Davis engaged in suspicious activity, but they never saw him engaged in any illegal activity. They saw him go to an open-air drug market, but they didn't see him stop. They didn't see him do a drug deal. They didn't have any corroborating information to corroborate their suspicions. The patrol deputies, furthermore, were unnamed in Mr. Hodgkiss' deposition. When asked for the identity of these particular patrol deputies, he could not name several of them. He could not name more than one, which was Officer McCormick. Within the context of the surveillance that Mr. Hodgkiss allegedly conducted on Mr. Davis, there were no notes of the surveillance. There was no indication and an admission within Mr. Hodgkiss' testimony that he didn't see Mr. Davis do anything illegal. Did he do things that were suspicious? Certainly. Did Mr. Hodgkiss have reasonable suspicion? Yes, but he did not have probable cause, and probable cause is the issue in this case. Most importantly, within the context of the traffic stop where marijuana residue was supposedly found by the officers, the traffic stop of a vehicle at one place does not give you a reasonable probability that you're going to find drugs at a different place and at a different time. Within the context of that traffic stop with this marijuana residue, it's possible that any marijuana residue was all in the car. That does not mean that there is necessarily marijuana at Ms. Saucedo's house, his wife's mother's house, at the time of the search warrant and the search at issue in this case. Just because there is drug residue and drug paraphernalia and evidence of drug use in the trash outside of Ms. Saucedo's house on one occasion does not give probable cause that there are still drugs inside of Ms. Saucedo's house after that first trash run, and that is why a second trash run is especially important in this case. When you do a second trash run, that means that in the first instance when the drugs were taken and put into the trash and the drugs were no longer in the house, that there is a reasonable probable suspicion that because there's drugs a second time, there were drugs in the house after the first time after the first trash run. With only one trash run, it's possible that all of the drugs were outside of the house. There is not that extra piece of evidence that is necessary in order to have an establishment of probable cause that there are still drugs in the house. That is why, and especially when you're considering this under Federal Rule of Civil Procedure 56, in the light most favorable to the nonmoving party, the appellees in this case, there is the material dispute as to whether there was probable cause based on only one trash run. Within the context of the light most favorable to the nonmoving parties, there is a question as to whether or not that trash even belonged to Mr. Davis and Ms. Salcedo. Yes, we acknowledge the argument of Mr. Hodgkiss that the contraband was in a sealed bag, that there was mail in the bag belonging to Ms. Salcedo. However, the record also demonstrates that Mr. Hodgkiss did not surveil, nobody surveilled whether or not Mr. Davis or Ms. Salcedo put that particular drug paraphernalia into that particular bag, whether somebody walking down the street put it there, whether in the light most favorable to the nonmoving party, whether the police put it there. Those are all viable options, especially when you do consider the totality of the circumstances. We have strong evidence that Mr. Hodgkiss committed a falsity before Judge King when he submitted the affidavit that calls his credibility into question, not just for the statement at issue in the case, but for all of the statements in his affidavit. Were there really drugs found in the trash? That's the credibility question for the jury. Was there really a surveillance of Mr. Davis? That's a credibility question for the jury to the extent that it's coming from Mr. Hodgkiss, to the extent that Mr. Hodgkiss didn't take notes of his surveillance, to the extent that Mr. Hodgkiss and his sergeant, Mr. Haston, exchanged drafts of this affidavit. And when those drafts are requested in discovery, the drafts are not produced. We argue that under federal rule of evidence, 106, 1002, and 1004, in the light most favorable to the nonmoving parties, that gives us the evidence necessary to survive summary judgment showing that Mr. Hodgkiss and Mr. Haston engaged in some kind of conspiracy to manufacture the probable cause. It's entirely possible that the draft of the affidavit sent from Mr. Hodgkiss to a superior, Mr. Haston, did not include information about the confidential informant. Mr. Hodgkiss is then told this is not enough for probable cause, go do more. And then suddenly we have the information about the confidential informant. To the extent that we are still dealing pre-trial with rule 56, in the light most favorable to the nonmoving party, and given the inferences available to us through the rules of evidence, we argue that there is sufficient evidence that, one, the material misstatement was made, two, that it was made on purpose, and three, that the remaining fixed portions of that affidavit do not demonstrate a showing of probable cause. We admit that there's reasonable suspicion. There may even have been probable cause to get a search warrant of the vehicle based on the traffic stop, but that does not necessarily, nor does it automatically cross-apply to a search warrant of the residence. Rather than waste much time of the court, my argument is complete. There is clearly a genuine dispute of material fact, and rather than repeat myself endlessly, if the court has any questions, I would certainly welcome them. Thank you. Yes, Robert, thank you. I would just like to point out that the only fact that's contested is whether or not Mr. Hotchkiss or Sergeant Hotchkiss misstated the source of information in his affidavit. None of the other facts set forth in the affidavit are contested. The parties have had discovery in this case. Plaintiffs have not an ounce of evidence to contradict any of the other facts set forth in the affidavit to challenge their credibility. So for him to say that there's some sort of fact issue for the jury to resolve in this case, that's not the case. This court can determine as a matter of law whether or not the uncontested facts in that affidavit establish probable cause. Second, he concedes that there was likely probable cause to search the car, Mr. Davis' car, and he says that that does not cross-apply to the residence. But the thing is, they found evidence linking the narcotics to the Saucedo residence. That trash run directly links narcotics to the residence. There were sealed trash bags from that household that contained male items to Ms. Saucedo and drug paraphernalia and residue of cocaine and marijuana, blunts, tons of evidence. I ask you to please look at the record. Look at what that trash run revealed. I'm sorry, Your Honor? Yes, Your Honor. There's evidence that establishes the connection to the household. The officer had reported seeing the same trash cans next to the Saucedo residence. They were the same trash cans that were outside on the curb. The trash bags were sealed. No one could have just come by and deposited stuff in them. They were tied and sealed, and they contained several male items addressed to Ms. Saucedo as well as the narcotics paraphernalia. So there was a definite connection that mailed to address to Ms. Saucedo that was in the trash bags with the drug paraphernalia was sufficient to establish a causal connection. And we've cited several cases, Your Honor, showing that that connection is sufficient to establish a connection between the trash and the residence. The male items along with the drug paraphernalia is sufficient. And the other consideration, Your Honor, is that if Mr. Davis used that same car that he was stopped in for the traffic stop, he would come and go from the house. This is what the surveillance established. He would come and go from the house to make his suspicious stops where he would meet with people and where he had suspected narcotics transactions. Like the instance where he left his house or left the Saucedo residence, drove to the parole office and met with a convicted felon who had an outstanding warrant. That man got in the car with Mr. Davis for a few minutes. There was some sort of exchange. Sergeant Hotchkiss saw a hand transaction and then that man got out of his car and neither one of them went to the parole office. So you have to look at the circumstances in the totality. It wasn't just the trash run where they discovered drug paraphernalia. It wasn't just the traffic stop where he was found to have large amounts of cash in small denominations. It wasn't just the other officers noting that there was unusual activity at the house and lots of traffic coming and going and people staying for short periods of time. It wasn't just his criminal record. It was all of those factors combined that gave Sergeant Hotchkiss probable cause to seek the search warrant in this case. And even if he made a misrepresentation, a minor misrepresentation in two sentences of that affidavit, which is denied, there's still plenty of other circumstances set forth in the affidavit in enough detail to establish probable cause in this case. Now, one of the things that plaintiffs complain about is that the affidavit itself didn't have enough description about the investigation or notes from the surveillance or the name of the officer. But we would contend that there is plenty of information in there. For probable cause, technical requirements of specificity have no place in a probable cause inquiry. There's tons of cases out there on this that says that courts should not invalidate warrants by interpreting affidavits in hyper-technical rather than common sense manner. All we're asking for you to do today is use your common sense. Look at all of the factors set forth in the affidavit. Would a reasonable law enforcement officer, knowing what Sergeant Hotchkiss knew, have believed that he had probable cause to seek the issuance of a search warrant? And we believe that the answer is yes. You have to consider all of the circumstances together, not any one of them separate. And that's where plaintiff and the district court are going wrong. They're truly picking apart each of the individual circumstances rather than considering them in the aggregate. In the aggregate, they show that there was probable cause as a matter of law. Thank you. Recording stopped. That concludes our oral arguments for today. Thank you, counsel. This case will do some good.